IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| HEATH GILBERT, ) | |
| ) | |
| Plaintiff, ) | Case No. 23-cv-6084 |
| ) | |
| v. ) | |
| ) | |
| CAMERON R-1 PUBLIC SCHOOLS ) | |
| d/b/a CAMERON R-1 SCHOOL DISTRICT and ) | |
| CAMERON R-1 BOARD OF EDUCATION, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

1. Plaintiff Heath Gilbert is a resident of Cameron, Missouri, and the parent of a child in the Cameron R-1 Public Schools (the "School District"). He is a vocal, engaged member of the Cameron community.

2. Since mid-2022, Mr. Gilbert has regularly attended meetings of the Cameron R-1 Board of Education (the "Board of Education") and communicated with School District employees to voice his opinions on a variety of issues in the School District, including concerns over inappropriate content in books available in school libraries, low test scores, a student drug testing policy, the School District's failure to comply with the Missouri Sunshine Law, objections to School District or Board of Education policies that prohibit recording conversations with School District employees, the School District's noncompliance with the Americans with Disabilities Act ("ADA"), the use of a school resource officer to intimidate Mr. Gilbert, and the Board of Education's decision to call police officers to board meetings.

3. In violation of his First and Fourteenth Amendment rights, the School District banned Mr. Gilbert from all school properties, including banning him from property where the Board of Education conducted open public meetings, for seventy days (the "Ban"). The School District did not fully explain its justifications for the Ban, did not give Mr. Gilbert an opportunity to be heard, and it did not provide any meaningful way to contest the Ban. Mr. Gilbert brings this lawsuit to challenge the Ban as unconstitutional and to remedy the violations to his constitutional rights.

## JURISDICTION AND VENUE

4. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation of rights secured by the First and Fourteenth Amendment to the United States Constitution.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 2201.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all relevant events giving rise to the claims occurred within Cameron, Missouri.

7. Divisional venue is proper in this Court because the events serving as the basis for Mr. Gilbert's claims arose in Cameron, Missouri, and at least one Defendant resides in Cameron, Missouri.

## THE PARTIES

8. Plaintiff Heath Gilbert is a citizen of Missouri. He is the parent of a child in the Cameron R-1 School District. At all relevant times, he resided in Cameron, Missouri.

9. Defendant Cameron R-1 Public Schools d/b/a Cameron R-1 School District is a Missouri school district that operates public schools within Cameron, Missouri.

10. Defendant Board of Education of the Cameron R-1 School District is the governing body of the School District.

11. At all times relevant hereto, the School District, Board of Education, and their agents, employees, officers, and representatives, including Superintendent Matt Robinson, acted under color of state law and on behalf of the School District and Board of Education in enforcing the Ban and policies of the School District and Board of Education. Mr. Robinson is the chief executive officer of the Board of Education and the administrative head of all divisions and departments of the School District. Mr. Robinson is responsible for the execution of Board of Education policies and regulations, empowered to give directives for the management of the school district on points not covered by the Board of Education policies and regulations, and is charged with creating, implementing and maintaining written administrative procedures to provide guidance on policy implementation.

## FACTS

*Policies of the Board of Education*

12. Board of Education policy KK, Visitors to District Property/Events, is included in the Board of Education Policy Manual (hereinafter "Policy KK").

13. Policy KK states that "[i]f a visitor's conduct becomes disruptive, threatening or violent, the superintendent, principal or a designee of either may require the visitor to leave. The superintendent or designee may inform the visitor that he or she is not welcome back on district property or at district events indefinitely or for a specific period of time."

14. Policy KK also states for individuals banned from School District property, "[t]he superintendent may make an exception for visitors to attend a meeting of the Board or its committees but is not obligated to do so."

3

15. Board of Education policy Administrative Procedure KK-AP(1): Visitors to District Property/Events (Public Conduct on District Property) (hereinafter "Visitor Policy" or "Policy KK-AP(1)") is included in the Board of Education Policy Manual.

16. According to the Visitor Policy, the Board of Education "encourages parents and other members of the public to visit district buildings and attend district events and activities; however, inappropriate behavior or conduct will not be tolerated."

17. The Visitor Policy lists six examples of such "inappropriate conduct" including, "but not limited to," "[f]ailing to obey the instructions of a security official or school district employee."

18. The Visitor Policy states that "[t]he superintendent may seek to deny future admission onto district property to any person by verbally notifying them or mailing a notice by first-class mail *and* by certified mail with return receipt requested."

19. Such a notice "should contain: 1. A description of the conduct. 2. The proposed time period for which admission to district events will be denied. 3. Instructions regarding the procedure for requesting to address the Board."

20. Additionally, according to the Visitor Policy, "[t]he superintendent is not obligated to make exceptions, but may allow visitors otherwise prohibited from being on district property to be on district property for the limited purposes of: 1. Attending open public meetings of the Board of Education and its committees. 2. Transporting his or her child to and from school and school activities. 3. Attending scheduled conferences or meetings with district personnel pertaining to the visitor's child."

21. Board of Education policy BDDH-1, Public Participation at Board Meetings, is included in the Board of Education Policy Manual (hereinafter "Policy BDDH-1").

4

22. Prior to March 20, 2023, Policy BDDH-1 stated "[t]o provide for full and open communication between the public and the Board of Education, the Board authorizes the following avenues for the exchange of information, ideas and opinions."

23. Included as one of the avenues for the exchange of information are public hearings. The prior version of Policy BDDH-1 stated the "Board will schedule a public hearing to receive input on matters of concern to the community." The prior version of Policy BDDH-1 also stated "specifically designated time will be set aside for public comments at regular meetings of the Board of Education."

24. The current version of Policy BDDH-1 similarly provides that "the board will schedule a public hearing to receive input on matters of community concern," "the district encourages the public to attend open school board meetings and other public meetings in person," and "members of the public may be provided the opportunity to speak at a school board meeting."

25. The current version of Policy BDDH-1 also states "[t]he board encourages residents to utilize the process for placing items on the agenda but will also specifically designate time for district residents to provide public comments at regular meetings of the board."

26. Board of Education policy BBB-1, School Board Elections, is included in the Board of Education Policy Manual (hereinafter "Board Election Policy").

27. The Board Election Policy requires candidates to "file a declaration of candidacy during business hours in the superintendent's office."

28. The Board Election Policy requires candidates to "declare their intent to become a candidate in person and in writing to the secretary of the board of education or designee."

5

*Mr. Gilbert's Engagement in Directing the Education of His Child and His Criticisms of the School District, Board of Education, and School Officials*

29. As a vocal member of the Cameron community, Mr. Gilbert has been critical—including at public meetings—of the School District, the Board of Education, and officials, including Mr. Robinson, since at least mid-2022.

30. Since mid-2022, Mr. Gilbert has filed dozens of Sunshine Law requests to receive more information about School District and Board of Education policies and procedures.

31. In addition, Mr. Gilbert regularly attends Board of Education meetings, where he has criticized the School District and Board of Education for low student test scores, noncompliance with the ADA, drug testing policies and practices, policies that prohibit recording conversations with School District employees, inviting police officers to Board of Education meetings, and for various other actions or policies.

32. The School District's Central Office located at 423 N. Chestnut, Cameron, Missouri 64429 (hereinafter "Central Office") houses the Board of Education office and the School District's custodian of records on the second floor. The Central Office building is also the location for regular open public meetings of the Board of Education.

33. Pursuant to the Missouri Sunshine Law, a public agency's custodian of records is responsible for a request for that agency's records, and Sunshine Law requests must be submitted to the agency's custodian of records. Mo. Rev. Stat. § 610.023.3.

34. Since mid-2022, Mr. Gilbert has submitted numerous complaints to the School District regarding the Defendants' violations of his First Amendment rights at public Board of Education meetings, violations of the Missouri Sunshine Law, the School District's drug testing policy, and other issues.

35. Mr. Gilbert has also filed grievances with the United States Department of Education and the Missouri Commission on Human Rights concerning the School District's violations of the Americans with Disabilities Act.

*Mr. Gilbert's December 19, 2022 Visit to the Central Office and Resulting Ban*

36. On December 19, 2022, Mr. Gilbert went to the Central Office to pick up records in response to a Sunshine Law request he had previously filed.

37. During his visit to the Central Office, Mr. Gilbert also wanted to review the agenda for the December 19, 2022 Board of Education meeting.

38. Missouri's Sunshine law, Mo. Rev. Stat. § 610.020.1, requires that all public governmental bodies must give notice of the time, date and place of each meeting, as well as a tentative agenda, "in a manner reasonably calculated to advise the public of the matters to be considered." The law specifies that "[r]easonable notice shall include . . . posting the notice on a bulletin board or other prominent place which is easily accessible to the public and clearly designated for that purpose at the principal office of the body holding the meeting, or if no such office exists, at the building in which the meeting is to be held."

39. Board of Education Policy BDDA: Notification of Board Meetings states that notice of all board meetings shall be posted "on a bulletin board or other easily accessible public place clearly designated for that purpose at the principal office of the Board."

40. Upon entering the Central Office, Mr. Gilbert asked to see the Board of Education's meeting agenda and was told the agenda was "posted upstairs" on the second floor of the building.

41. Mr. Gilbert stated that he would go upstairs to view the agenda.

42. At no point prior to going upstairs to review the agenda was Mr. Gilbert told he was not permitted on the second floor to view the agenda.

7

43. No employee prevented Mr. Gilbert from proceeding to the second floor.

44. Kelly Walker is an employee of the School District (hereinafter "Ms. Walker").

45. When Mr. Gilbert reached the second floor, Ms. Walker directed him to a display case where the agenda "is always posted" and Mr. Gilbert began reviewing the agenda.

46. Mr. Gilbert asked Ms. Walker for the name of the Board of Education policy that governs the addition of topics to the Board of Education's monthly meeting agenda, a request he initially made on or about December 12, 2022.

47. Shortly after, Mr. Gilbert was approached by Laurie Mefford, a School District employee and the assistant superintendent (hereinafter "Ms. Mefford").

48. Mr. Gilbert also asked Ms. Mefford for the name of the Board of Education policy that governs the addition of topics to the Board of Education's monthly meeting agenda.

49. Only after Mr. Gilbert inquired into the name of this policy did Ms. Mefford tell Mr. Gilbert if he would go downstairs she would go to her computer and bring that information down to him.

50. Mr. Gilbert told Ms. Mefford that he was reviewing the agenda and had a right to review the Board meeting agenda in person.

51. During an ensuing conversation, Ms. Mefford asked Mr. Gilbert why he wouldn't go downstairs and Mr. Gilbert repeatedly stated he needed to complete his review of the agenda.

52. After reading the agenda, Mr. Gilbert returned to the Central Office's first floor.

53. When Mr. Gilbert returned to the first floor of the Central Office, Ms. Mefford asked that next time Mr. Gilbert check in with reception before going upstairs.

54. Mr. Gilbert informed Ms. Mefford that the agenda needed to be posted in a publicly accessible area and that he had a legal right to review the agenda.

8

Case 5:23-cv-06084-JAM    Document 1    Filed 07/14/23    Page 8 of 17

55. Mr. Gilbert also suggested that Ms. Mefford post the agenda downstairs so he would not have to go upstairs.

56. A school resource officer, overhearing Mr. Gilbert's conversation with Ms. Mefford, told Ms. Mefford—while looking directly at Mr. Gilbert—that if Mr. Gilbert failed to comply with her instructions in the future the officer would arrest Mr. Gilbert.

57. Upon information and belief, School District employees told a police officer that Mr. Gilbert had been harassing employees.

58. After inquiring into the status of other unfulfilled Sunshine Law requests, Mr. Gilbert left the Central Office.

59. Mr. Gilbert did not raise his voice, harass, or have any physical contact with any School District employee or other individual during his visit to the Central Office on December 19, 2022.

60. On or around December 21, 2022, Mr. Gilbert received a letter from Mr. Robinson, in his capacity as Superintendent of the School District and pursuant to a policy of the Board of Education (hereinafter the "December 21, 2022 Letter" and attached hereto as **Exhibit A**), banning him from all school properties—including open public meetings of the Board of Education—until March 1, 2023 (hereinafter the "Ban").

61. According to the December 21, 2022 Letter, the School District decided to ban Mr. Gilbert from district property because he purportedly violated "procedures and policies regarding building visitors."

62. The December 21, 2022 Letter alleged that Mr. Gilbert "proceeded, without permission, past the reception area and Great Circle classrooms to the second floor of the building to view the Board of Education agenda."

63. In the December 21, 2022 Letter, Mr. Robinson wrote that the Visitor Policy "clearly states that individuals refusing to comply with the instructions of a school employee will be banned from school property."

64. The December 21, 2022 Letter did not provide any other facts to explain the School District's decision.

65. The December 21, 2022 Letter did not set out a process to contest the Ban or provide Mr. Gilbert any meaningful opportunity to contest the Ban.

66. The December 21, 2022 Letter cited Policy KK, Policy KK-AP(1), and Policy BDDH-1 as authority supporting the Ban.

67. According to the December 21, 2022 Letter, "any visits to school properties will be considered trespassing and law enforcement will be notified" if Mr. Gilbert were to violate the Ban.

68. The December 21, 2022 Letter stated that Mr. Gilbert "may request" to come on to district property to attend Board of Education meetings, to drop off or pick up his child from school, and/or to attend scheduled meetings "pertaining to" his child's "academics," but he "must first receive permission from the superintendent of schools [Mr. Robinson]" to do so.

69. The December 21, 2022 Letter stated "the superintendent is not obligated to make exceptions" that would allow Mr. Gilbert on to school property for these reasons if Mr. Gilbert were to make such requests.

70. The Ban prevented Mr. Gilbert from attending Board of Education meetings that he would have otherwise attended in January 2023 and February 2023.

71. But for the Ban, Mr. Gilbert would have further discussed his concerns regarding the School District and Board of Education's noncompliance with the Missouri Sunshine Law,

their drug testing policy, and inappropriate content in books available in school libraries at either the January 2023 or February 2023 Board of Education meeting, or both.

72. At the first available opportunity, after the ban expired, Mr. Gilbert—and other Cameron residents—attended the March 2023 Board of Education meeting and addressed the Board regarding inappropriate content in books available in school libraries.

73. The Ban also prevented Mr. Gilbert from running for a seat on the Board of Education.

74. Board Election Policy requires candidates to "file a declaration of candidacy during business hours in the superintendent's office" and requires candidates to "declare their intent to become a candidate in person and in writing to the secretary of the board of education or designee."

75. Because the Ban prohibited Mr. Gilbert from entering School District property where the superintendent's office and offices of members of the Board of Education are located, Mr. Gilbert was unable to file a declaration of candidacy in the superintendent's office or declare his intent to become a candidate before the secretary of the Board of Education.

76. When Mr. Gilbert requested permission in February 2023 to pick his child up from school, the assistant principal, Derek Lannigan, told Mr. Gilbert that Mr. Lannigan had spoken to Mr. Robinson and Mr. Robinson made the decision that Mr. Gilbert needed to stay in his car and could not enter the school building.

77. Prior to sending the December 21, 2022 Letter, Mr. Robinson and Defendants were aware of Mr. Gilbert's criticisms of the School District and the Board of Education.

## COUNT I – Impermissible Restriction on Speech in Public Forum
**Violation of the First Amendment to the U.S. Constitution against Defendants**
**(42 U.S.C. § 1983)**

78. Mr. Gilbert repeats the allegations set forth above as if fully set forth herein.

79. The First Amendment to the U.S. Constitution prohibits the abridgment and chilling of free speech.

80. The First Amendment is applicable to the states through the Fourteenth Amendment.

81. Speech critical of the government and its officials, including Mr. Gilbert's speech that criticized the School District, Board of Education members and district employees—including Mr. Robinson—is protected speech under the First Amendment.

82. Persons violating the First Amendment under color of state law are liable at law and in equity under 42 U.S.C. § 1983.

83. The public comment period of the open public meetings of the Board of Education constitutes a public forum.

84. Because the public comment period of the open public meetings of the Board of Education is, at the least, a limited public forum, Defendants cannot unreasonably exclude individuals from those meetings.

85. Mr. Gilbert engaged in constitutionally protected speech when he attended open public meetings of the Board of Education to voice his opinions and submitted other complaints to the School District regarding disagreements with School District and Board of Education policies and actions.

86. Mr. Gilbert was prevented, chilled, and inhibited from engaging in constitutionally protected First Amendment activity as a result of the Ban.

87. Defendants, by banning Mr. Gilbert from these meetings for seventy days, directly infringed on Mr. Gilbert's free speech rights under the First Amendment because the Ban operated as an unlawful prior restraint and unlawfully prevented Mr. Gilbert's speech and participation in a public forum.

88. Mr. Robinson acted pursuant to School District and School Board Policy KK and KK-AP(1) in instituting the Ban.

89. Defendants delegated to Mr. Robinson the authority to ban individuals from school property.

90. Even though the alleged violation of School District policy did not occur during a Board of Education meeting, Defendants instituted a complete ban from all school property, including open public meetings of the Board of Education.

91. Restrictions on speech in limited public forums must, at the least, be reasonable in light of the forum's purpose and viewpoint neutral. *Rosenberger v. Rector & Visitors of the Univ. of Va.*, 515 U.S. 819, 829 (1995).

92. The Ban burdened substantially more speech than was necessary for the School District to achieve any legitimate interest, failed to leave open alternative avenues for expression, and was unreasonable in light of the purpose of the forum.

93. Upon information and belief—and given the Defendants knowledge of Mr. Gilbert's criticisms and timing of the Ban—the Ban was also motivated by Defendant's disagreement with Mr. Gilbert's opinions and criticisms of School District policies and actions and constitutes viewpoint discrimination.

13

94. The terms of the Ban gave unbridled discretion to Mr. Robinson to determine whether Mr. Gilbert may attend open public meetings of the Board of Education and further demonstrate the viewpoint discriminatory nature of the Ban.

95. The School District notified Mr. Gilbert that "any visits to school properties" in violation of such bans "will be considered trespassing and law enforcement will be notified."

96. Mr. Gilbert was forced to alter his constitutionally protected activities to avoid further adverse actions from the School District.

## COUNT II – Retaliation
### Retaliation in Violation of the First Amendment to the U.S. Constitution against Defendants
### (42 U.S.C. § 1983)

97. Mr. Gilbert repeats the allegations set forth above as if fully set forth herein.

98. Mr. Gilbert engaged in constitutionally protected speech when he attended open public meetings of the Board of Education to voice his opinions and submitted other complaints to the School District regarding disagreements with School District and Board of Education policies and actions.

99. Defendants banned Mr. Gilbert from open public meetings of the Board of Education and from all school property for seventy days in retaliation for his constitutionally protected speech.

100. Defendants knew of Mr. Gilbert's criticisms, disapproved of Mr. Gilbert's criticisms, and banned him shortly after he lodged those criticisms, preventing him from—among other things—speaking at open meetings of the Board of Education and becoming a candidate for the school board.

101. The Ban was motivated by Mr. Gilbert's constitutionally protected activities, including his criticisms of School District and Board of Education policies at multiple Board of Education meetings.

102. The School District notified Mr. Gilbert that "any visits to school properties" in violation of such bans "will be considered trespassing and law enforcement will be notified."

103. Mr. Gilbert was prevented, chilled, and inhibited from engaging in constitutionally protected First Amendment activity as a result of the Ban.

104. Mr. Gilbert was forced to alter his constitutionally protected activities to avoid further adverse actions from the School District.

105. The Ban would chill a person of ordinary firmness from continuing to engage in constitutionally protected First Amendment activity, including questioning and criticizing Defendants and school officials.

**COUNT III – Due Process**
**Violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution against Defendants**
**(42 U.S.C. § 1983)**

106. Mr. Gilbert repeats the allegations set forth above as if fully set forth herein.

107. A government entity, including the School District and Board of Education, cannot deprive an individual of a property or liberty interest without due process of law.

108. Procedural due process requires both notice and an opportunity to be heard at a meaningful time and in a meaningful manner.

109. Mr. Gilbert has a strong First Amendment interest in access to the public comment periods of open public meetings of the Board of Education, which are public forums.

110. The December 21, 2022 Letter instituting the Ban did not set out a process for contesting the Ban, and Mr. Gilbert did not have any meaningful opportunity to contest the Ban.

111. Any interest Defendants had in instituting and enforcing the Ban does not justify depriving Mr. Gilbert of an opportunity to be heard or challenge the Ban.

112. The Board of Education's Policies KK and KK-AP(1) permit the superintendent to deprive individuals of their liberty interest in attending the public comment period of open public meetings of the Board of Education without providing a process to contest the deprivation.

113. Because Policies KK and KK-AP(1) establish no opportunity for individuals to be heard in connection with a ban from School District property, they do not afford sufficient process prior to the deprivation of the liberty interest in attending the public comment period of open public meetings of the Board of Education.

## **PRAYER FOR RELIEF**

114. WHEREFORE, Plaintiff Heath Gilbert respectfully requests that this Court:

    a. Enter a judgment in favor of Mr. Gilbert and against Defendants on all counts;

    b. Enter a declaration that Policies KK and KK-AP(1) violate the First Amendment by failing to require that any ban of individuals from open public meetings of the school board be reasonably related to the purpose of the public forum that exists at school board meetings;

    c. Enter a declaration that Policies KK and KK-AP(1) violate the Due Process Clause by failing to provide sufficient process prior to depriving individuals of their First Amendment right to access to a public forum;

    d. Award Plaintiff nominal damages on all counts;

    e. Award Plaintiff costs and attorneys' fees pursuant to 42 U.S.C. § 1988; and

    f. Grant such other relief as the Court deems just and proper.

Dated: July 14, 2023                                     Respectfully submitted,

/s/  Lisa S. Hoppenjans
Lisa S. Hoppenjans, #63890 (MO)
First Amendment Clinic
Washington University in St. Louis
  School of Law
1 Brookings Drive
St. Louis, MO 63130
Phone: (314) 935-8980
lhoppenjans@wustl.edu

**ATTORNEY FOR PLAINTIFF**